# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5417-17T3
                A-5418-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

R.D.A.J.A. and W.L.,

     Defendants-Appellants,

and

M.A.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.C.I.A.
and D.L.A.B.,

     Minors.

_____

Submitted September 12, 2019 – Decided September 24, 2019

Before Judges Alvarez and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0032-17.

Joseph E. Krakora, Public Defender, attorney for appellant W.L. (Kimberly A. Burke, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant R.D.A.J.A. (Anastasia P. Winslow, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Christina Anne Duclos, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Noel Christian Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant R.D.A.J.A. (Rita)[1] appeals from a July 5, 2018 judgment

terminating her parental rights to two daughters,[2] Marla, then age fourteen, and

---

[1]  We use fictitious names for the sake of anonymity.

[2]  W.L. died on May 8, 2019.  Accordingly, we dismiss his appeal as moot pursuant to Rule 2:8-2.  Sadly, any decision we were to make regarding the termination of his parental rights would have no practical effect or grant him relief.  See Redd v. Bowman, 223 N.J. 87, 104 (2015); Plainfield v. Dept. of Health, 412 N.J. Super. 466, 483-84 (App. Div. 2010).

A-5417-17T3

Donna, then age seven.[3] After a ten-day trial, Judge Audrey Peyton Blackburn, J.S.C., terminated Rita's parental rights by way of a detailed oral decision rendered from the bench. The judge concluded the Division of Child Permanency and Protection (Division) had satisfied all four prongs of the best interest of the child test found in N.J.S.A. 30:4C-15.1(a). We affirm.

On appeal, Rita raises the following points:

> POINT ONE
> THE TRIAL COURT ERRED IN ITS LEGAL ANALYSIS IN APPLYING THE FOUR PRONGS OF THE TERMINATION STATUTE, AS IT FAILED TO CONSIDER MARLA AND DONNA AS INDIVIDUALS BUT ADDRESSED THE TERMINATION QUESTION AS APPLIED TO THEM TOGETHER.
>
> POINT TWO
> THE TRIAL COURT ERRED IN FINDING THAT [DIVISION] HAD PROVED ALL FOUR PRONGS OF THE TERMINATION STATUTE BY CLEAR AND CONVINCING EVIDENCE.
>
>> Prong one: The trial court erred in finding that [Division] proved the requisite harm from the parental relationship to justify terminating Rita's parental rights.
>>
>> Prong two: The trial court erred in ruling that [Division] proved, by clear and convincing

---

[3] An older child, who was also removed, was court ordered into an independent living program and is not involved in this appeal.

evidence, that Rita was unwilling or unable to eliminate the harm.

Prong three: The trial court erred in finding that [Division] proved, by clear and convincing evidence, that its services were reasonably designed to address the circumstances that led to the removal.

Prong four: The trial court erred in finding [Division] proved, by clear and convincing evidence, that termination of parental rights would not do more harm than good.

POINT THREE
THIS COURT SHOULD AFFORD NO WEIGHT TO THE OPINIONS OF [DIVISION'S] EXPERTS AS TO RITA'S PARENTING CAPACITY ON THIS APPEAL [DRS. KARP AND EIG] BECAUSE [DIVISION] WITHHELD CRITICAL UPDATED INFORMATION FROM THESE EXPERTS AS TO RITA'S THERAPY, PROGRESS AND BEHAVIORS IN VISITATION.

These alleged errors merit limited discussion. R. 2:11-3(e)(1)(E).

We summarize the dispositive facts. Rita, who came into the Division's care, custody, and supervision at age three, suffered both sexual and physical abuse in foster homes, and possibly in the home of her adoptive mother as well. She had two children early in her life that she did not raise. Rita was thirty-eight years old at the time of trial, graduated from high school, but was unable to secure stable housing or employment.

4

On March 13, 2015, Rita was living with the children in a house raided by police executing a search warrant for suspected narcotics distribution. During the raid, law enforcement observed a bruise on Donna's face in the shape of a belt buckle. An alligator was found in the basement. The children were removed and placed in their current resource home.

Rita suffers from lifelong mental health issues for which she only sporadically treats. One of the two psychologists who testified at trial, Jamie Gordon-Karp, Psy.D., found that in addition to drug and alcohol abuse, bipolar disease, and depression, Rita may suffer from significant anger control problems. Gordon-Karp could not complete the testing because Rita tore up the testing materials, thereby ending the session. Gordon-Karp declined to engage in additional interviews with Rita because the psychologist was concerned for her own safety. Gordon-Karp opined that Rita's untreated childhood traumas caused her to be unable to respond appropriately to stressful situations.

The children were at ease with their mother during Gordon-Karp's earlier bonding evaluation, although she doubted if they had a bond with her. She concluded, however, they had a bond with their foster parents, who wished to adopt. Gordon-Karp also concluded Rita could not ameliorate any harm resulting from removal of the children from the resource home, but found the

5

foster parents had the skills necessary to ameliorate any harm that the children might suffer from termination of parental rights.

When evaluated by a second psychologist, Brian Eig, Psy.D., Rita acknowledged her diagnosis of bipolar disorder and borderline personality disorder. He noted that Rita had been both aggressor and victim of domestic violence. The record indicates she once inflicted injuries on a boyfriend with a knife. Eig opined that Rita could not effectively parent because she suffers from personality disorders — which are resistant to treatment — thus there was little likelihood of the improvement necessary to enable her to function as a parent. He further opined that Rita's personality disorder included anti-social, borderline, and paranoid traits, and maladaptive behaviors including impulsivity and unlawfulness. Eig's bonding evaluations found that the children did not have a strong bond with their mother and that even if they might suffer some psychological harm from termination, the resource parents could ameliorate it. Eig considered their bond to their resource parents to be "positive and strong," but not yet secure. The children were bonded to each other.

After removal, visitation between Rita and the girls began on a positive note — but became sporadic for months at a time. When they resumed, the visitation supervisor testified Rita was intermittently inappropriate, such as

taunting the children by telling them not to call her "mom," for example, or saying that she would be glad to stop attending visits.

Our review of a trial judge's decision in this context is limited and deferential. We do not disturb her findings so long as they are supported by substantial credible evidence. See N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We defer to the judge's evaluation of the credibility of witnesses, including experts, and to the acknowledged expertise of Family Part judges in their arena. Id. at 552-53.

Applying that standard, it is clear this record contains substantial credible evidence supporting the trial judge's conclusions — there is no basis for us to disturb them. We therefore only briefly address each point of alleged error.

As to point one, the trial judge properly addressed the risk that Rita poses to both children as a parent. See In re Guardianship of K.H.O., 161 N.J. 337, 352 (1999). It would not serve any purpose for that consideration to be made in any other fashion. The children were removed from Rita's care only when a visible bruise was observed on Donna's face during a narcotics raid at the home where she was living. The subsequent psychological evaluations determined that Rita "had longstanding, unremediated mental health and substance abuse

issues." The risk she poses to both children is the same, thus the judge's analysis, which conformed to established precedent, was correct.

In her second point, Rita challenges the trial judge's conclusion that the Division met the statutory best interest test by clear and convincing evidence. We disagree. Rita's life was untouched at the core by the removal of the children and the prospect of losing her parental rights. Whether due to the nature of her mental health issues or for some other reason, after the removal she gained no stability nor did she progress in her life situation, for her own sake or that of her children.

Finally, contrary to Rita's assertion in her third point, the trial judge did not abuse her discretion by accepting the opinions of the Division's two experts and according them great weight. See In re Accutane Litigation, 234 N.J. 340, 391 (2018); State v. Goodman, 415 N.J. Super. 210, 224-25 (App. Div. 2010) (A judge's decision to admit evidence or expert testimony is reviewed for abuse of discretion). Even if the experts were not provided with the most recent treatment information, or details regarding the most recent visits with the children, the omission does not cast doubt on the expert opinions given the nature of Rita's mental health issues. The treatment was neither a short- nor long-term solution to Rita's diagnoses.

Rita no doubt loves her daughters. But they need, and are entitled to, the security of a nurturing, permanent home. Unfortunately, Rita cannot fulfill that essential requirement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5417-17T3